UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEM ROMAN MORONES,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING
CENTER et al.,

Respondents.

Case No. 5:26-cv-02907-HDV-ADS

**ORDER GRANTING PETITIONER'S
MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION [2]**

## I.   INTRODUCTION

Petitioner Sem Roman Morones ("Petitioner" or "Morones"), a Mexican national and a former DACA recipient, entered the United States around October 1990 when he was four years old. After living in the United States for about thirty-five years, he was abruptly detained on March 10, 2026 while attending a scheduled immigration appointment.

On May 28, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") and an *Ex Parte* Application for Temporary Restraining Order ("Application") requesting his immediate release from detention. [Dkts. 1, 2].  The Court granted the Application in part, enjoining Respondents from transferring, relocating, or removing Petitioner outside of the Central District of California, and set a briefing schedule and hearing as to whether a preliminary injunction should issue with the Application serving at the opening brief.  [Dkt. 6].  Respondents filed a Response on June 5, 2026, opposing Petitioner's immediate release.  Response at 2–3 [Dkt. 8].

Here, Petitioner was previously released by DHS with conditions of supervision after a Notice to Appear in 2023, and Petitioner has not violated those conditions in the intervening three years.  Nor did Respondents provide Petitioner with a prompt bond hearing when he was detained. Offering one now, as Respondent's Opposition brief implicitly concedes was required, is not enough.  As an increasing wave of district courts have concluded, a post-hoc bond hearing "cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid." *Mumaev v. Semaia*, No. 5:25-cv-03409-FLA-MAR, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026).[1]

On June 9, 2026, the Court held a hearing on the Application, granted the preliminary injunction, and ordered Petitioner's immediate release.  [Dkt. 10].  This written order memorializes the basis for that release.

---

[1] *See also Charaf v. Rios*, No. 5:26-cv-01971-MAR, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); *Morales v. U.S. Immigr. and Customs Enf't*, No. 5:26-cv-01404-DOC-MAR, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); *Osmel v. D. Marin*, No. ED-cv-26-1548-E, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); *Singh v. Janecka*, No. 5:26-cv-01414-ACCV, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026).

## II.    BACKGROUND

Petitioner Sem Roman Morones is thirty-nine years old and arrived in the U.S. from Mexico in October 1990 at the age of four.  Application ¶¶ 1, 4.  Petitioner is married to a United States citizen and they have one infant child who is also a U.S. citizen.  *Id*. ¶ 5.

In 2023, Petitioner was arrested for a misdemeanor offense that occurred in 2020.  June 9, 2026 Hearing Transcript ("Hearing").  He was released on his own recognizance and pled to summary probation.  *Id.*   On the immigration side, he was issued a Notice to Appear in August 2023 as a result of his misdemeanor, and was released with conditions the same day of the hearing.  *Id*. He has not committed any additional violations in the intervening three years.

On March 10, 2026, Petitioner was detained by ICE during his scheduled check-in. Application at 2.  He was transferred to the Adelanto ICE  processing center in Adelanto, California. *Id*. ¶ 3.  Petitioner has a pending case before the Executive Office for Immigration Review (EOIR). *Id*. ¶ 7.  He also has an application for Cancellation of Removal and a pending Petition for Alien Relative, Form I-130, filed by his U.S. citizen wife.  *Id.*  Petitioner does not have a final order of removal.  *Id*. ¶ 9.  On May 19, 2026, the immigration court denied Petitioner a bond hearing, holding that the court lacked jurisdiction to consider his release.  *Id*. ¶ 10.  This decision was based on jurisdictional grounds only, and the court did not conduct an individualized assessment of flight risk, danger to the community, or other bases for release.  *Id*.

## III.    LEGAL STANDARD

The standard for issuing a preliminary injunction is the same as that for issuing a temporary restraining order.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co*., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  To prevail on such a motion, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024).  Where the non-movant is a government entity, "the third and fourth factors ... merge."  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of*

*Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id*. at 684 (citation omitted). "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id*. (citation omitted).

## IV. DISCUSSION

### A. Likelihood of Success

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). In *Mathews v. Eldridge*, the Supreme Court outlined three factors relevant for the due process inquiry: (i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. 424 U.S. 319, 335 (1976).[2] As explained below, and articulated by the Court at the hearing on June 9, 2026, each of the *Mathews* factors strongly favors Petitioner's release and his entitlement to a hearing before he may be re-detained.

### 1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Even individuals who face significant constraints on their liberty or over whose liberty the government

---

[2] The Supreme Court, the Ninth Circuit, and its sister circuits have consistently applied the *Mathews* test to non-citizens' due process challenges where the non-citizen has entered and been residing in the United States. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases).

wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id*.

Here, Petitioner has established a life in the United States. He has a wife and a minor child, both of whom are U.S citizens, and was previously the recipient of DACA. While he was convicted of a misdemeanor offense in 2020, he has been successfully rehabilitated into society without any further law enforcement contact. Application ¶ 13. Petitioner also underwent a psychological and risk assessment on May 4, 2026, conducted by licensed psychologist Hy Malinek, Psy.D., who assessed him as "very low risk" to the community. *Id.* ¶¶ 12, 14; *see also* attachment to Petition [Dkts. 1; 1-1]. Moreover, he was subject to a Notice to Appear in immigration court in 2023, and was released with conditions at that time. Hearing.

Petitioner's release and rehabilitation into society thus, "constituted and 'implied promise' that [his] liberty would not be revoked unless [he] 'failed to live up to the conditions of [his] release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482). Yet despite the lack of changed circumstances, Petitioner was not provided with a pre-deprivation hearing, nor did the immigration court hold a substantive bond hearing. This is especially troubling when considering Petitioner's significant private interest in his liberty. Under these circumstances, Petitioner has a substantial interest in his freedom from incarceration, and his detention deprived him of this interest. *See id*. at 1032; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025

4

WL 1676854, at *3 (N.D. Cal. June 14, 2025) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Morales*, 2026 WL 1026234, at *5 ("Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of parole. . . . A liberty interest, such as Petitioner's, is paramount and should be protected."); *Morrissey*, 408 U.S. at 482.

### 2. Risk of Erroneous Deprivation

Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government has offered no evidence that Petitioner's detention would serve either purpose. Indeed, the evidence before the Court suggests the government may have difficulty establishing such a basis. Here, Respondents were given ample opportunity to produce further evidence, but they failed to do so. If Respondents truly believed Petitioner was a danger to the community, they could have filed any additional relevant information under seal. Instead, Petitioner was released into the community where he has lived for six years without incident, and the government has failed to show any change in circumstances.

Providing Petitioner with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis. Indeed, given that Petitioner was detained for three months without a bond hearing, allowing a post-deprivation bond hearing to justify an unlawful re-detention would substantially risk that Petitioner will be detained without any valid purpose for an indefinite and unreasonable period of time.

### 3. Government Interest

More fundamentally, as to the third *Mathews* factor, there is no countervailing government interest that supports conducting a bond hearing only after Petitioner has been detained, rather than in advance thereof. In the proceedings before this Court, Respondents have articulated no legitimate interest that would support arresting Petitioner without a pre-detention hearing. Through his continued presence in the United States for over thirty-five years, established family life, and prior release with no violations for six years, Petitioner has demonstrated that he poses neither a danger to the community nor a flight risk. *See Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL

783561, at *3 (N.D. Cal. Mar. 1, 2021) (Petitioner's "strong family ties and "continued employment as a driller" minimized government's concern that he is a danger or flight risk).

Indeed, Respondents' nationwide policy of detaining previously-paroled immigrants without a pre-detention hearing not only flouts the law, but serves no legitimate purpose. "[W]hether or not the government's existing regulations and practices provide for pre-detention bond hearings, due process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of [his] liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi*, 792 F. Supp. 3d at 1036.

### B. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Id*. at 995. Petitioner has articulated that his wife and child depend on him economically and emotionally. Application ¶ 6. Accordingly, this factor weighs strongly in favor of granting the Motion.

### C. Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

6

Of course, the government and the public have a significant interest in the enforcement of immigration laws, but that includes an interest in "upholding procedural protections against unlawful detention." *Pinchi*, 792 F. Supp. 3d at 1037 (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct.").

## V.    CONCLUSION

For the foregoing reasons, and for the reasons stated on the record at the hearing on June 9, 2026, the Court grants the preliminary injunction. The Court ordered Respondents to **release Petitioner Sem Roman Morones (A# 204-599-824)** from custody at the hearing. Further, Respondents are:

- Enjoined and restrained from re-detaining Petitioner without immediately providing him with a pre-deprivation bond hearing.[3]

---

[3] At any such hearing, consistent with Ninth Circuit precedent, the government will bear the burden of showing by clear and convincing evidence whether Petitioner poses a flight risk or danger to the public. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022); *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the detainee] is a danger to the community."); *id.* at 786 (reiterating that "due process requires . . . the government to prove dangerousness or risk of flight by clear and convincing evidence") (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011), *abrogated on other grounds as recognized by Rodriguez Diaz*, 53 F.4th at 1202); *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 540 F. Supp. 3d 983, 990–91 (S.D. Cal. 2021) (discussing Ninth Circuit precedent establishing the government's burden and finding the IJ's placement of the burden of proof on detainee violated the Due Process Clause); *Balwan v. Bondi*, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (surveying circuit caselaw and concluding that the government should bear the burden); *Vazquez v. Mattos*, 2026 WL 658896, at *2 (D. Nev. Mar. 9, 2026) (requiring the government to bear the burden) (citing *Singh* and *Martinez*); *Lima v. Wofford*, 2025 WL 3535009, at *4 (E.D. Cal. Dec. 10, 2025) ("The statute is silent on the burden of proof required in a bond hearing under § 1226(a). However, the Ninth Circuit has squarely ruled that due process requires that the Government bear the burden at a § 1226(a) bond hearing of justifying detention by clear and convincing evidence.") (citing *Singh*, 638 F.3d at 1203-06); *Mendoza v. Noem, et al.*, 2026 WL 683180, at *8-*9 (E.D. Cal. Mar. 11, 2026) (analyzing Ninth Circuit cases to find that the holding in *Singh* placing the burden on the government should still be followed).

7

- Enjoined and restrained from removing Petitioner to a third country without notice and a meaningful opportunity to respond and contest such removal.[4]

- Ordered to file a report regarding the status of compliance with the Court's Order no later than **June 11, 2026**.

- Ordered to return Petitioner's property to him.

- Ordered to meet and confer with Petitioner's counsel regarding whether this Order may constitute the Judgment closing the case.

Dated: June 12, 2026

_____

Hernán D. Vera
United States District Judge

---

[4] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

8